COPY

Scott A. Kamber (*pro hac vice* app. pending)
skamber@kamberlaw.com
David A. Stampley (*pro hac vice* app. pending)
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:  (212) 920-3081

Avi Kreitenberg (SBN 266571)
akreitenberg@kamberlaw.com
KamberLaw, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone:  (310) 400-1050
Facsimile:  (310) 400-1056

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER AGUIRRE, Individually, on Behalf of Herself and All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> QUANTCAST CORPORATION, a Delaware Corporation, and HULU, LLC, a Delaware Corporation, <br><br> Defendants. | CASE NO. CV10 5716 GHK (RZx) <br><br> JURY DEMAND <br><br> CLASS ACTION COMPLAINT FOR: <br><br> 1. Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; <br><br> 2. Violation of the Cal. Uniform Trade Secrets Act, Civ. Code § 3426; <br><br> 3. Violation of the Cal. Computer Crime Law, Penal Code § 502; <br><br> 4. Violation of the Cal. Unfair Competition Law, Bus. and Prof. Code § 17200; <br><br> 5. Violation of the Cal. Consumer Legal Remedies Act, Civ. Code § 1750; <br><br> 6. Unjust Enrichment |

Class Action Complaint                    1

**CLASS ACTION COMPLAINT**

Plaintiff, Jennifer Aguirre ("Plaintiff"), on behalf of herself and all other similarly situated individuals (each a "Class Member" of the putative "Class," as further described herein), by and through her attorneys, KamberLaw, LLP and KamberLaw, LLC, as and for her complaint and demanding trial by jury, alleges as follows based on her personal knowledge as to herself and her own acts and observations and, otherwise, upon information and belief based on the investigation of counsel, which Plaintiff believes further investigation and discovery will support with substantial evidence.

## I.  NATURE OF THE CASE

1.      Plaintiff and Class Members are consumers in the United States who use their desktop and laptop computers to access websites on Internet, and including users who configured their web browser privacy settings to deny permission for third parties to set browser cookies on their computers.

2.      Hulu, LLC ("Hulu") streams television programs and other video content to users. Quantcast Corporation ("Quantcast") is an Internet audience metrics company. Together, Quantcast and Hulu ("Defendants") hacked the computers of millions of consumers' computers rogue, cookie-like tracking code on users' computers. With this tracking code, Defendants circumvented users' controls for managing web privacy and security.

3.      Defendants perpetrated this exploit so they could monitor users, help themselves to users' personal information, and continue doing so for as long as Defendants' liked without ever having to ask or take a user's "no" for answer. In fact, users' "no" answers were the reason Defendants devised the scheme in the first place.

4.      The personal information Defendants misappropriated and compiled, through Quantcast's other web affiliations and data sources, included details about users' video viewing choices and personal characteristics such as gender,

age, race, number of children, education level, geographic location, and house-hold income. Defendants use the resulting profiles to identify individual users and track them on an ongoing basis, across numerous websites, even spotting and tracking users when they accessed the web from different computers, at home or at work.

## II.  JURISDICTION AND VENUE

5.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

6.  Venue is proper in this District under 28 U.S.C. § 1391(b) because defendant Hulu, LLC is a corporation headquartered in Los Angeles County, California.

7.  Venue is also proper in this District under 28 U.S.C. § 1391(b) because Defendants' improper conduct alleged in this complaint occurred in, was directed from, and/or emanated from this judicial district.

## III.  PARTIES

8.  Plaintiff Jennifer Aguirre is a resident of Milwaukee County in the State of Wisconsin.

9.  Defendant Quantcast Corporation ("Quantcast') is a Delaware corporation with headquarters at 201 Third Street, Second Floor, San Francisco, California 94103. Quantcast does business throughout the United States and, in particular, in the State of California and Los Angeles County.

10.  Defendant Hulu, LLC ("Hulu") is a Delaware corporation with headquarters at 12312 West Olympic Boulevard, Los Angeles, California 90064. Hulu does business throughout the United States and, in particular, in the State of California and County of Los Angeles.

# IV.  STATEMENT OF FACTS

## A.    Background

11.     In 1994, in the first web browser[1] to allow for the exchange of cookie values[2] between a web server and user's computer, the browser, by default, first-party websites'[3] cookies and rejected third-party cookies. "HTTP Cookies: Standards, Privacy, and Politics," David M. Kristol, 2001, available at http://arxiv.org/abs/cs/0105018 (last accessed June 22, 2010) at 9-10. Third-party cookie transactions were considered "unverifiable transactions" and a threat to users' privacy and security; users had no way of knowing in advance whether third parties might be setting cookies on their computers, for what reason, and who the third parties were. The default configuration—rejection of third-party cookies—was retained when, in 2000, the Internet Engineering Task Force

---

[1]     A browser is software installed on a user's personal computer . . . and with which the user, by communicating through an electronic network such as the Internet, can access Web sites.

*In the Matter of Netscape Communications Corporation*, Assurance of Discontinuance, Attorney General of the State of New York (June 13, 2003).

[2] A cookie is a small string of text transmitted to and from a user's computer in a communication between a server group and a particular instance of browser client software. For ease of reference in this complaint, this exchange is characterized a communication between a website and a user, or user's browser

[3]     "First-party Web site" is the Web site a User affirmatively requests to visit, for example, by typing in the site's URL or by clicking on a hyperlink to the site.

*In the Matter of DoubleClick Inc.: Agreement Between the Attys. Gen. of the States of Arizona, California, Connecticut, Massachusetts, Michigan, New Jersey, New Mexico, New York, Vermont, and Washington and Doubleclick Inc.,* Aug. 26, 2002 at 2, available at http://www.ag.ny.gov/media_center/2002/aug/-aug26a_02_attach.pdf (last accessed July 29, 2010).

(IETF) finalized the global standard for web servers and browsers to follow in exchanging cookies. *See* "RFC 2965, HTTP State Management Mechanism" [Kristol and Montulli 2000], Internet Engineering Task Force, Oct. 7, 2000, available at http://www.ietf.org/rfc/rfc2695.txt.pdf (last accessed July 27, 2010).

12.    Nascent Internet advertising companies protested the standard. The leading commercial browser vendors, Microsoft and Netscape, declined to implement it. Kristol at 21.Thus, a *de facto* standard was propagated as browser vendors engaged in mass distribution of their software: if a first-party website—the site the user expressly chose to visit—chose to display a web page that included a third-party advertisement or use a third-party-provided traffic counter, the third party gained the ability to set cookies on users' computers with no notice to those users.

13.    This development cleared the way for third-party advertising companies to engage in widespread "network advertising." By assembling a client network of many websites, advertising companies could recognize, track, and profile users activities across many websites. As early as 2001, DoubleClick was delivering ads on a network of over 11,000 websites. *In re DoubleClick Inc. Privacy Litigation*, 154 F.Supp.2d 497, 500 (S.D.N.Y. 2001). By 2009, Google, which acquired DoubleClick, was serving ads on a network of millions of websites. Google Inc., SEC Form 10-K for period ending Dec. 31, 2009 at 9. In 2009, advertising accounted for 97 percent of Google's $24 revenue in 2009. *Id.* at 19. At the same time, it became more important to commercial entities to be able to measure advertising activity and user traffic.

14.    Meanwhile, browser vendors and other companies have distributed software tools that offer users some measure of third-party cookie control. For example, users can accept or refuse to accept all or certain third-party cookies or to automatically delete them at intervals of users' choosing. These software

Class Action Complaint                    5

1  tools—like other software owned or licensed by users, such as Adobe Flash

2  Player—are under the authority and control of those users.

3        15.    One reason users employ tools to manage and delete cookies is dis-

4  taste for being profiled. According to PreferenceCentral, an online ad preference

5  management provider, 58 percent of U.S. Internet users expressed willingness to

6  receive behaviorally targeted ads in exchange for free content. However, when

7  told how behavioral targeting works, the number of willing users dropped to be-

8  low 38 percent, and 50 percent of users stated they would elect to receive a more

9  limited selection of free content and untargeted advertisements. "Consumer Per-

10  spectives on Online Advertising 2010," PreferenceCentral, July 7, 2010, available

11  at http://www.preferencecentral.com/consumersurvey/results/behavioral-

12  targeting/ (last accessed July 28, 2010).

13  **B.    Quantcast's Conduct**

14        16.    User control over third-party cookies has created challenges for ad-

15  vertisers, online ad networks, as well as Internet metrics companies such as

16  Quantcast, that attempt to track and profile users over time and/or across multiple

17  websites. For online companies that rely on cookies to track users and measure

18  user activity, cookie deletion skews the numbers.

19        17.    Quantcast, however, identified a way to work with its website affili-

20  ates to wrest control of browser cookies from users by installing, on users' com-

21  puters, a tracking device that users could not easily detect, manage, or delete. In

22  cooperation with websites, Quantcast planted its own tracking code on users'

23  computers—but not in a cookie. Quantcast and participating websites, including

24  Hulu, stored tracking as an Adobe Flash Media Player local shared object (LSO).

25  Adobe Flash Media Player is software that enables users to view video content on

26  their computers, and Adobe . Quantcast then merged the tracking results with in-

27  formation from other sources to arrive at metrics for the site.

28

Class Action Complaint          6

18.     Quantcast and Hulu's perpetration of this exploit was independently confirmed in a report issued by academic researchers and titled, "Flash Cookies and Privacy," which found that:

a.     A user visiting Hulu's site would receive a standard, browser cookie, and an identical "Flash cookie."

b.     If the user deleted the browser cookie, the Flash cookie would be used to "re-spawn" the browser cookie.

c.     These operations happened without any notice to the user and without any consent from the user.

"Flash Cookies and Privacy," A. Soltani, S. Canty, Q. Mayo, L. Thomas, C.J. Hoofnagle, Univ. Cal., Berkeley, Aug. 10, 2009 at 3, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1446862 (last accessed July 28, 2010).

19.     In a letter to the Federal Trade Commission earlier this year, Adobe Systems Incorporated condemned the use of LSOs to back-up and re-spawn browser cookies without express user consent. Letter to FTC, Adobe Systems Inc., Jan. 27, 2010, available at http://www.ftc.gov/os/comments/privacy-roundtable/544506-00085.pdf (last accessed July 27, 2010).

**C.     Plaintiff's Experience**

20.     On or about late February, 2010, Plaintiff visited Hulu's website at http://www.hulu.com. She provided her name and email address to Hulu.

21.     Subsequently, Plaintiff examined the contents of the local storage associated with the Adobe Flash Player application on her computer. She observed that the objects in local storage included one object labeled "player.hulu.com" and another labeled "www.hulu.com\com.quantserve.sol." It is Plaintiff's belief that one or more of these objects is a tracking device used by Hulu and Quantcast, without authorization, to monitor and profile her Internet activities.

Class Action Complaint                    7

22.     Plaintiff did not receive notice of the installation of such a device, did not consent to the installation of such a device, and did not want such a device to be installed on her computer.

23.     After visiting Hulu's website, Plaintiff observed that her computer tended to operate more slowly and sometimes froze when loading web pages. Plaintiff spent several hundred dollars for maintenance on her computer, attempting to address this condition.

24.     Plaintiff believes that, if she were to visit the Hulu site again, the tracking device would be used as a substitute cookie or to re-spawn previously set cookies.

25.     Plaintiff considers information about her online activities to be in the nature of confidential, trade secret information that she protects from disclosure, including by controlling her browser settings for acceptance or rejection of cookies.

26.     After visiting Hulu, Plaintiff observed that her attempts to download web pages were slower and sometimes caused the operation of her personal computer to "freeze.."

27.     Plaintiff's experience is typical of the experiences of Class Members.

**D.     User Consequences**

1.     Defendants manipulated their "Flash cookies" in storage areas of Plaintiff's  and Class Members' computers, which were computers used in and affecting interstate commerce and communication and were therefore protected computers as defined in the Computer Fraud and Abuse Act, Title 18, United States Code, Section 1030(e)(2).

28.     Defendants' actions were surreptitious and without notice and so were conducted without authorization and exceeding authorization.

29.     Defendants' conduct has caused economic loss to Plaintiffs and Class Members in that, in barter economy in which users' patronage (which is the

subject of Quantcast's traffic measurement activities) is the currency with which users acquire ostensibly no-fee web services, and which constitutes independent economic value.

30. In addition, inasmuch as Defendants' wrongfully acquired Plaintiff's and Class Members' patronage, Plaintiffs and Class Member's were deprived of the opportunity to contribute their patronage to web entities that did not engage in such wrongful conduct.

31. Plaintiff and Class Members incurred the costs of repairing their computers to remediate the impaired operability caused by Defendants.

32. Further, the personal information misappropriated by Defendants, the "Flash cookies" copied from Plaintiff and Class Members' browser cookies and populated with their actual user data constitute assets with discernable values. Certainly given Defendants' conduct, Defendants associate economic value with the users' cookies. In addition, cookies even have specific valuations in criminal markets. For example, Symantec reported that, in 2007, the illicit market value of a valid Hotmail or Yahoo cookie was three dollars, though other sources have re-ported the prices have since dropped due to a current oversupply.

33. The aggregated loss and damage sustained by Subscribers set forth above includes economic loss with an aggregated value of at least $5,000 during a one-year period.

34. Defendants perpetrated the acts and omissions set forth in this com-plaint through an organized campaign of deployment, which constituted a single act.

35. Plaintiff and Class Members sought to maintain the secrecy and con-fidentiality of their personal information assets acquired by Defendants, which as-sets were trade secrets, particularly Plaintiff's and Class Members' Internet browsing activities.

Class Action Complaint 9

36. The means by which Defendants obtained such information, and the reasons Quantcast engaged in its campaign (user deletion of cookies) demonstrate the confidential character of such information and users' efforts to protect it.

## V. CLASS ALLEGATIONS

37. Pursuant to the Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), Plaintiff brings this action as a class action on behalf of herself and all others similarly situated as members of the Class, defined as follows:

> All individuals or entities in the United States who, from June 1, 2008 through the date of class certification (the "Class Period"), used web browsers on their home or laptop computers to access one or more web pages owned, controlled, and/or operated, in whole or in part, by Hulu, LLC and/or Quantcast Corporation, and during which access Hulu, LLC and/or Quantcast Corporation stored or caused to be stored an Adobe Flash Player local stored object on such persons' computers for purposes other than using Adobe Flash Player to display video content to such persons.

38. Excluded from the Class are Defendants, their legal representatives, assigns, and successors, and any entity in which a Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and the judge's immediate family.

39. Plaintiff reserves the right to revise this definition of the Class based on facts learned in the course of litigation of this matter.

40. The Class consists of millions of individuals and other entities, making joinder impractical.

41. The claims of Plaintiff are typical of the claims of all other Class Members

Class Action Complaint                    10

42.     Plaintiff will fairly and adequately represent the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of Class Members and have the financial resources to do so. Neither Plaintiff nor her counsel has any interests adverse to those of the other Class Members.

43.     Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy.

44.     The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

45.     Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

46.     The factual and legal bases of Defendants' liability to Plaintiff and other Class Members are the same, resulting in injury to Plaintiff and all of the other Class Members. Plaintiff and the other Class Members have all suffered harm and damages as a result of Defendants' wrongful conduct.

47.     There are many questions of law and fact common to Plaintiff and the Class Members and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to the following, regarding Defendants' conduct described herein:

a.     whether Defendants, without authorization, created and/or manipulated Adobe Flash Player local stored objects on computers to which Class Members' enjoyed rights of possession superior to those of Defendants;

1          b.     for what purposes Defendants created and/or manipulated

2  Adobe Flash Player local stored objects on Class Members' computers;

3          c.     whether Defendants violated:

4                  i.     the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

5                  ii.    the California Uniform Trade Secrets Act, Civil Code §

6                        3426;

7                 iii.   the California Computer Crime Law, Penal Code § 502;

8                 iv.   the California Unfair Competition Law, Business and

9                       Professions Code § 17200;

10                v.    the California Consumer Legal Remedies Act, Civil

11                     Code § 1750; and

12          d.     whether Defendants misappropriated valuable information as-

13  sets of Class Members;

14          e.     whether Defendants continue to retain valuable information

15  assets from and about Class Members;

16          f.     what uses of such information were exercised and continue to

17  be exercised by Defendants; and

18          g.     whether Defendants have been unjustly enriched.

19     48.    The questions of law and fact common to Class Members predomi-

20  nate over any questions affecting only individual members, and a class action is

21  superior to all other available methods for the fair and efficient adjudication of

22  this controversy.

23                              **COUNT I**

24  **Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et. seq.**

25     49.    Plaintiff incorporates the foregoing allegations as if fully set forth

26  herein.

27     50.    Defendants' conduct was in violation of Title 18, United States

28  Code, Section 1030(a)(4) in that: Defendants knowingly and with intent to de-

---

1   fraud accessed Plaintiff's and Class Members' protected computers; Defendants
2   did so without authorization and exceeding any authorization; Defendants, by
3   means of such conduct, furthered the intended fraud and created and used unau-
4   thorized LSOs.

5       51.    Defendants' conduct was in violation of Title 18, United States
6   Code, Section 1030(a)(5)(C) in that Defendants intentionally accessed Plaintiff's
7   and Class Members' protected computer systems and, as a result of such conduct,
8   caused damage and loss.

9       52.    As a result of Defendants' conduct, Plaintiff and Class Members suf-
10   fered damages and loss exceeding an aggregate value of $5,000 over a one-year
11   period.

12       53.    In addition, Plaintiff and Class Members have suffered consequences
13   for which there is no adequate remedy at law.

14       54.    Therefore, Plaintiff and the Class Members are entitled to compensa-
15   tory damages, injunctive relief, and such other equitable relief and further relief
16   as the Court deems just and proper under Title 18, United States Code, Section
17   1030(g).

18   **COUNT II**
19   **Violation of the California Uniform Trade Secrets Act ("CUTSA")**
20   **Civil Code § 3426**

21       55.    Plaintiff incorporates the above allegations by reference as if set
22   forth herein at length.

23       56.    Defendants acquired information assets of Plaintiffs and Class
24   Members, and which information assets were trade secrets in that Plaintiff and
25   Class Members derived independent, actual and potential economic value from
26   the assets' not being generally known to the public and to other persons who
27   could obtain economic value from disclosure or use of the assets, and regarding

28

Class Action Complaint       13

1  which Plaintiffs and Class Members engaged and engage in reasonable efforts
2  under the circumstances to maintain secrecy.

3       57.    Defendants' misappropriation of these assets has caused in actual
4  economic loss to Plaintiff and Class Members' and has also caused them eco-
5  nomic loss in the form of opportunity costs imposed on Plaintiffs and Class
6  Members by Defendants' misappropriation.

7       58.    Defendants' taking of Plaintiff's and Class Members' information
8  assets was misappropriation of trade secrets inasmuch as Defendants knew and
9  had reason to know such information was acquired by improper means and with-
10  out Plaintiff's and Class Members' consent, express or implied.

11       59.    Defendants used improper means to acquire Plaintiff's and Class
12  Members trade secret information inasmuch as Defendants' used theft, misrepre-
13  sentation, and electronic espionage.

14       60.    Defendants' conduct was wrongful, intentional, and is a direct,
15  proximate cause of harm suffered by Plaintiff and Class Members, as set forth
16  above.

17       61.    In addition, Plaintiff and Class Members have suffered irreparable
18  injury from these unauthorized acts of misappropriation and use of their informa-
19  tion assets, which Defendants still possess. Due to the ongoing misappropriation
20  and continuing threat of injury, Plaintiff and Class Members have no adequate
21  remedy at law, entitling Plaintiff to injunctive relief.

22       62.    Therefore, Plaintiff and Class Members are entitled to: compensatory
23  damages in an amount to be proven at trial; injunctive relief; punitive and exem-
24  plary damages pursuant to Section 3294 of the California Civil Code; reasonable
25  attorneys' fees; and such other equitable relief as the Court deems just and proper.

26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III

### Violation of the California Computer Crime Law ("CCCL")

### Penal Code § 502

63.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

64.     Defendants violated Sections 502(c)(1), (2), and (7) of the California Penal Code in that: Defendants knowingly, willfully, and without permission accessed and used Plaintiff's and Class Members' computer systems and the Adobe Flash Player local area storage on those computer systems, wrongfully using and controlling Plaintiff's and Class Members' computer resources and information assets, wrongfully circumventing Plaintiff's and Class Members' privacy and security controls, and doing so in order to execute a scheme to defraud Plaintiff and Class Members through misappropriation and, further, to use misappropriated information assets to Defendants' financial advantage and to Plaintiff's and Class Members' material detriment.

65.     Defendants' conduct is a direct, proximate cause of harm suffered by Plaintiff and Class Members, as set forth above.

66.     In addition, Plaintiff and Class Members have suffered irreparable injury from these unauthorized acts of misappropriation and use of their information assets, which Defendants still possess. Due to the ongoing misappropriation and continuing threat of injury, Plaintiff and Class Members have no adequate remedy at law, entitling Plaintiff to injunctive relief.

67.     Therefore, Plaintiff and Class Members are entitled to: compensatory damages in an amount to be proven at trial; injunctive relief; punitive and exemplary damages pursuant to Section 3294 of the California Civil Code; reasonable attorneys' fees; and such other equitable relief as the Court deems just and proper.

Class Action Complaint                    15

**COUNT IV**

**Violation of the California Unfair Competition Law ("UCL")**

**Business and Professions Code § 17200**

68.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69.     In violation of California Business and Professions Code § 17200 *et seq.*, Defendants' conduct in this regard is ongoing and includes, but is not limited to, unfair, unlawful, and fraudulent conduct.

70.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiff and the Class have suffered injury-in-fact and have lost money and/or property—specifically, valuable personal information; the economic value of their patronage; the economic value of their right to patronize and right of denial; and damage to their personal computers.

71.     Defendants' business acts and practices are unlawful, in part, because they violate California Business and Professions Code § 17500, *et seq.*, which prohibits false advertising, in that they were untrue and misleading statements relating to Defendants' performance of services and with the intent to induce consumers to enter into obligations relating to such services, and regarding statements Defendants knew were false or by the exercise of reasonable care Defendants should have known to be untrue and misleading.

72.     Defendants' business acts and practices are also unlawful in that they violate the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, the California Uniform Trade Secrets Act, Civil Code § 3426, the California Computer Crime Law, Penal Code § 401, and the California Consumer Legal Remedies Act, Civil Code § 1750. Defendants are therefore in violation of the "unlawful" prong of the UCL.

73.     Defendants' business acts and practices are unfair because they cause harm and injury-in-fact to Plaintiff and Class Members and for which Defendants have no justification other than to increase, beyond what Defendants would have otherwise realized, its profit in fees from advertisers and its information assets through the acquisition of consumers' personal information. Defendants' conduct lacks reasonable and legitimate justification in that Defendants have benefited from such conduct and practices while Plaintiff and the Class Members have been misled as to the nature and integrity of Defendants' services and have, in fact, suffered material disadvantage regarding their interests in the privacy and confidentiality of their personal information. Defendants' conduct offends public policy in California tethered to the Consumer Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing the need for consumers to obtain material information that enables them to safeguard their own privacy interests, including California Civil Code, Section 1798.80.

74.     In addition, Defendants' *modus operandi* constitutes a sharp practice in that Defendants knew and should have known, that consumers care about the security, integrity, and operability of their personal computers; the privacy of their online activities, and the confidentiality of their personal information assets and, at the same time, knew Plaintiff and Class Members were unlikely to be aware of the manner in which Defendants' conduct violated those such interests. Defendants are therefore in violation of the "unfair" prong of the UCL.

75.     Defendants' acts and practices were fraudulent within the meaning of the UCL because they are likely to mislead the members of the public to whom they were directed.

76.     Plaintiff, on behalf of herself and each Class Member, seeks individual restitution, injunctive relief, and other relief allowed under the UCL as the Court deems just and proper.

**COUNT V**

**Violation of the California Consumer Legal Remedies Act ("CLRA")**

**Civil Code § 1750**

77.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

78.   In violation of Civil Code section 1750, *et seq.* (the "CLRA"), Defendants have engaged and are engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff, and such transactions are intended to and have resulted in the sales of services to consumers.

79.   Plaintiff and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendants' good or services for personal, family, or household purposes. Defendants' past and ongoing acts and practices include but are not limited to:

　　　　a.   Defendants' representations that its services have characteristics, uses, and benefits that they do not have, in violation of Civil Code § 1770(a)(5);

　　　　b.   Defendants' representations that their services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Code § 1770(a)(7); and

　　　　c.   Defendants' advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code § 1770(a)(9).

80.   Defendants' violations of Civil Code § 1770 have caused damage to Plaintiff and the other Class Members and threaten additional injury if the violations continue. This damage includes the losses set forth above.

81.   At this time, Plaintiff seeks only injunctive relief under this cause of action. Pursuant to California Civil Code, Section 1782, Plaintiff will notify Defendants in writing of the particular violations of Civil Code, Section 1770 and

1  demand that Defendants rectify the problems associated with its behavior detailed

2  above, which acts and practices are in violation of Civil Code § 1770.

3       82.    If Defendants fail to respond adequately to Plaintiff's above-

4  described demand within 30 days of Plaintiff's notice, pursuant to California

5  Civil Code, Section 1782(b), Plaintiff will, with the Court's permission, amend

6  the complaint to request damages and other relief, as permitted by Civil Code,

7  Section 1780.

8                          **COUNT VI**

9                        **Unjust Enrichment**

10      83.    Plaintiff incorporates the above allegations by reference as if set

11 forth herein at length.

12      84.    Plaintiff asserts this claim against each and every Defendant named

13 herein in this complaint on behalf of herself and the Class.

14      85.    A benefit has been conferred upon all Defendants by Plaintiff and

15 the Class. On information and belief, Defendants, directly or indirectly, have re-

16 ceived and retain the financial gains they have acquired through their use of mis-

17 appropriated information. In addition, Defendants retain Plaintiff's and Class

18 Members' information assets, which are private, confidential, and not of public

19 record.

20      86.    Defendants appreciate or have knowledge of said benefit.

21      87.    Under principles of equity and good conscience, Defendants should

22 not be permitted to retain the information assets and/or revenue that they acquired

23 by virtue of their unlawful conduct. All funds, revenues, Class Member informa-

24 tion, derivatives of such information, and other related benefits acquired by De-

25 fendants have been acquired through Defendants' unjust actions and rightfully be-

26 long to Plaintiff and the Class.

27                     **PRAYER FOR RELIEF**

28      WHEREFORE, Plaintiff, on behalf of herself and the Class, respectfully

---

Class Action Complaint                   19

prays that the Court enter judgment in their favor as follows::

1.     With respect to all counts, declaring the action a proper class action and designating Plaintiff and her counsel as representatives of the Class;

2.     As applicable to the Class *mutatis mutandis*, awarding injunctive and equitable relief including, *inter alia*:

a.      prohibiting Defendants from engaging in the acts alleged above;

b.     requiring Defendants to disgorge all ill-gotten gains to Plaintiff and the other Class Members or to whomever the Court deems appropriate;

c.     requiring Defendants to delete all data misappropriated through the acts alleged above;

d.     requiring Defendants to provide Plaintiff and the other Class Members a means to easily and permanently purge their membership data and address book information from Defendants;

e.     awarding Plaintiff and Class Members full restitution of all benefits wrongfully acquired by Defendants by means of the wrongful conduct alleged herein; and

f.     ordering an accounting and constructive trust imposed on the data, funds, and other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendants;

3.     For a preliminary and permanent injunction restraining Defendants, their officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from:

a.     transmitting any information about Plaintiff or Class Members' activities on the Internet for advertising purposes to any other websites or entities, without fair, clear and conspicuous notice of the intent to transmit infor-

Class Action Complaint                    20

mation, including a full description of all information potentially and/or actually available for transmission;

b.　　transmitting any information about Plaintiff or Class Members' activities on the Internet for advertising purposes to any other websites or entities, without fair, clear and conspicuous opportunity to decline the transmittal prior to any transmission of data or information;

4.　　A permanent injunction enjoining and restraining Defendants, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually, from:

a.　　initiating or procuring transmission of unsolicited commercial electronic messages on or through Class Members' computers, Class Members' email services and networks, or to Defendants users;

b.　　accessing or attempting to access Class Members' email services and networks, data, information, user information, profiles, computers and/or computer systems;

c.　　soliciting, requesting, or taking any action to induce Hulu visitors to provide identifying information, or representing that such solicitation, request, or action is being done with any Class Member's authorization or approval;

d.　　retaining any copies, electronic or otherwise, of any Class Members' information assets obtained through illegitimate and/or unlawful actions;

e.　　engaging in any activity that alters, damages, deletes, destroys, disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Class Members' computers, computer systems, computer networks, data, websites, and email or other services;

f.　　engaging in any unlawful activities alleged in this complaint; and

g.      entering or accessing any of the physical premises or facilities of Class Members or their counsel.

5.      An order requiring Defendants to account for, hold in constructive trust, pay over to Class Members, and otherwise disgorge all profits derived by Defendants from their unlawful conduct and unjust enrichment, as permitted by law;

6.      An award to Class Members of damages, including but not limited to, compensatory, statutory, exemplary, aggravated, and punitive damages, as permitted by law and in such amounts to be proven at trial;

7.      Award restitution against Defendants for all money to which Plaintiff and the Class are entitled in equity;

8.      An award to Class Members of reasonable costs, including reasonable attorneys' fees;

9.      For pre-and post-judgment interest as allowed by law; and

88.      For such other and further relief as this Court deems just and proper.

Respectfully, submitted

DATED: July 30, 2010                 KAMBERLAW, LLC

                                                  KAMBERLAW, LLP


                                                  By: Avi Kreitenberg

                                                  Attorneys for Jennifer Aguirre,
                                                  individually and on behalf of a class
                                                  of similarly situated individuals

1

**JURY TRIAL DEMAND**

2

3          Plaintiff hereby demands a trial by jury of all issues so triable.

4

5  Respectfully, submitted

6  DATED: July 30, 2010                    KAMBERLAW, LLC

7                                          KAMBERLAW, LLP

8

9

10                                 By: Avi Kreitenberg

11                                 Attorneys for Jennifer Aguirre,
                                   individually and on behalf of a class
12                                 of similarly situated individuals

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint                     23

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV10- 5716 GHK (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address:
Avi M. Kreitenberg (SBN 266571)
KAMBERLAW, LLP
1180 South Beverly Drive, Suite 601
Los Angeles, California 90035
Telephone: (310) 400-1050

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

JENNIFER AGUIRRE, Individually, on Behalf of
Herself and All Others Similarly Situated

PLAINTIFF(S)

v.

QUANTCAST CORPORATION, a Delaware
Corporation, and HULU, LLC, a Delaware Corporation

DEFENDANT(S).

CASE NUMBER

CV10 5716 GHK (RZx)

**SUMMONS**

TO:    DEFENDANT(S): _____

_____

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Avi M. Kreitenberg , whose address is KamberLaw, LLP, 1180 South Beverly Drive, Suite 601, Los Angeles, California 90035 . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

**CHRISTOPHER POWERS**

Dated:    JUL 30 2010 _____

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

JENNIFER AGUIRRE, Individually, on Behalf of Herself and All Others Similarly Situated

**DEFENDANTS**

QUANTCAST CORPORATION, a Delaware Corporation, and HULU, LLC, a Delaware Corporation

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Avi M. Kreitenberg, KamberLaw, LLP
1180 South Beverly Drive, Suite 601, Los Angeles, California 90035
Telephone: (310) 400-1050

**Attorneys** (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒1 Original Proceeding
☐2 Removed from State Court
☐3 Remanded from Appellate Court
☐4 Reinstated or Reopened
☐5 Transferred from another district (specify):
☐6 Multi-District Litigation
☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Violation of (1) 18 U.S.C. § 1030; (2) California Civil Code § 3426; (3) California Penal Code § 502; See Attachment A for additional causes of action

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☒ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:** Case Number: _____

CV10 5716

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☐ No ☑ Yes
If yes, list case number(s): CV10-05484 GW (JCGx)

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                   ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                   ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                   ☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | California Counties Outside of this District: San Diego County<br>Other States: Texas; New Mexico |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | California Counties outside of this district: San Francisco; Palo Alto; San Carlos<br>Other States: New York; Connecticut; Washington |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date July 28, 2010

     Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

**ATTACHMENT A**
Attachment to Civil Cover Sheet
Case Number: _____

**Additional Causes of Action:**

(4) California Penal Code § 630; (5) California Bus and Prof. Code § 17200;
(6) California Civil Code §1750; (7) Unjust Enrichment